Pierce Gore (SBN 128515)
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiff*

# Filed

JAN 1 7 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Fee paid*
*SI* (99)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

# CV13- 0236 HRL

| | |
|---|---|
| KIM AVOY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION AND REPRESENTATIVE ACTION** |
| v. | **COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| TURTLE MOUNTAIN, LLC | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff, through the undersigned attorneys, brings this lawsuit against Defendant Turtle

Mountain, LLC ("Turtle Mountain" or "Defendant") as to Plaintiff's own acts upon personal

knowledge, and as to all other matters upon information and belief.  To remedy the harm arising

from Defendant's unlawful conduct, which has resulted in unjust profits, Plaintiff brings this action

on behalf of a national class and a California subclass of consumers who, within the last four years,

purchased Defendant's coconut products or its products labeled with the ingredient "Organic

Dehydrated Cane Juice" or "Organic Evaporated Cane Juice."  Defendant's coconut products and

its products which list "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" as an

ingredient on their labels are referred to herein as "Misbranded Food Products."

-1-

**INTRODUCTION**

1.      Defendant Turtle Mountain is a privately held natural foods company which specializes in the creation of dairy free products.  Turtle Mountain produces a variety of dairy free frozen desserts, beverages, and cultured products.  Its two most prominent brands, So Delicious Dairy Free and Purely Decadent can be found in grocery stores and natural food stores in California and throughout the United States.

2.      As part of its overall marketing strategy, Defendant recognizes that consumers desire to eat a healthier diet comprised of foods with no added sugar. Defendant similarly recognizes that consumers are willing to pay a premium for such healthy foods, and Defendant actively promotes the health benefits of its products.  For example, Defendant's website, www.sodelicousdairyfree.com makes the following representations regarding Defendant's products:

- In western society, the health benefits of coconuts are just beginning to be understood.  The mystery appears to be in the favorable fats found in coconut.

- Although coconut contains saturated fat, a closer examination shows that not all saturated fats pose a health problem.  Saturated fat chains exist in a variety of lengths which impact the body differently.

- Coconut represents a vegetarian-sourced saturated fat consisting of medium chain fatty acids (MCFA).  Scientists have long recognized MCFA's such as lauric and capric acid for their anti-viral and anti-microbial properties.  The body utilizes MCFA's as energy instead of storing them as fat.

- COCONUT HEALTH BENEFITS & FACTS

  Here are just a few health benefits ascribed to coconut:

  - Coconut consuming cultures around the world have lower incidence of heart disease than Americans.

  - Lauric acid exists abundantly in coconut and plays a fundamental role in building our body's immune system. Once in our system it transforms into an antibacterial and antiviral substance called "monolaurin" which destroys viruses and diseases.

  - Lauric acid also occurs naturally in human breast milk and

-2-

1  plays a vital role in nourishing and protecting babies from infections.

2

3  • MCFAs promote weight maintenance without raising cholesterol levels. They work best for preventing weight gain if you're not overweight or maintaining your new weight after a successful diet.

4

5

6  3.  Turtle Mountain currently markets many different flavors and varieties of its

7  soymilk and coconut milk products which list either "Organic Dehydrated Cane Juice" or "Organic

8  Evaporated Cane Juice" as an ingredient. These products include the So Delicious Dairy Free brand

9  soy milk frozen desserts in the following flavors: Peanut Butter Zig Zag, Mocha Almond Fudge,

10  Mint Chip, Cookie Dough, Cookie Avalanche, Chocolate Peanut Butter, Butter Pecan, Creamy

11  Vanilla, Dulce De Leche, Neapolitan, Mocha Fudge, Mint Marble Fudge, Chocolate Velvet,

12  Pomegranate Chip, Pralines Pecan, Turtle Trails, Creamy Fudge Bars, Minis Organic Creamy

13  Fudge Bars, Minis Neapolitan Sandwiches, Vanilla Sandwiches, and Minis Vanilla Sandwiches.

14  Additionally, Turtle Mountain markets a variety of cultured coconut milk products which

15  Defendant describes on its website as "yogurts" and whose labels list "Organic Evaporated Cane

16  Juice" as an ingredient. These include Chocolate "Yogurt," Passionate Mango "Yogurt," Pina

17  Colada "Yogurt," Plain "Yogurt," Raspberry "Yogurt," Strawberry "Yogurt," Vanilla "Yogurt,"

18  Strawberry "Yogurt" Beverage, and Vanilla "Yogurt" Beverage. All of these products are

19  misbranded for the reasons stated herein.

20  4.  Although Defendant lists "Organic Dehydrated Cane Juice" or "Organic Evaporated

21  Cane Juice" as an ingredient on the products indicated above, and on other products as well, the

22  Food and Drug Administration ("FDA") has specifically warned companies not to use these terms

23  because they are 1)"false and misleading;" 2) in violation of a number of labeling regulations

24  designed to ensure that manufacturers label their products with the common and usual names of the

25  ingredients they use and accurately describe the ingredients they utilize; and 3) the ingredient in

26  question is not a juice.

27  5.  Further, to be called "yogurt," a product must meet the FDA's Standard of Identity

28  for yogurt, 21 C.F.R. § 131.200, which has been adopted by California. The Standard of Identity

-3-

for yogurt requires certain forms of milk in the manufacture of the product. Defendant's cultured products described as "yogurt" on Defendant's website do not contain any form of milk as defined in the Standard of Identity.    All of Defendant's products labeled as "yogurt" do not contain the ingredients required by the FDA's Standard of Identity and therefore are misbranded.

6.    Additionally, the FDA's Standard of Identity for yogurt prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the Standard of Identity:

> sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup; dried maltose sirup; malt extract; dried malt extract; malt sirup; dried malt sirup; honey; maple sugar, or any of the sweeteners listed in part 168 of this chapter [21], except table sirup.

7.    In referencing "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" in its marketing materials, Defendant does not disclose the fact that "Organic Dehydrated Cane Juice" and "Organic Evaporated Cane Juice" are, in their ordinary and commonly understood terms known as, "sugar," and/or "dried cane syrup."

8.    For example, on its website, Defendant displays the image and list of ingredients for its Organic So Delicious Dairy Free Chocolate Velvet non-dairy frozen dessert as follows:



-4-

*Class Action Complaint*

1

# Nutrition Facts

2

| Serving Size | 1/2 cup (81g) | |
|---|---|---|

3

**Amount Per Serving**

| **Calories** | | 130 |
|---|---|---|
| Calories from Fat | | 30 |

% Daily Value*

| | | |
|---|---|---|
| **Total Fat** | 3.5g | 5% |
| Saturated Fat | 0.5g | 3% |
| Trans Fat | 0g | |
| **Cholesterol** | 0mg | 0% |
| **Sodium** | 50mg | 2% |
| **Potassium** | 0mg | 0% |
| **Total Carbohydrate** | 23g | 8% |
| Dietary Fiber | 1g | 4% |
| Sugar | 14g | |
| **Protein** | 2g | |

| • Vitamin A | 0% |
|---|---|
| • Vitamin C | 0% |
| • Calcium | 0% |
| • Iron | 4% |

Ingredients: ORGANIC SOYMILK (FILTERED WATER, ORGANIC SOYBEANS), ORGANIC DEHYDRATED CANE JUICE, ORGANIC BROWN RICE SYRUP AND/OR ORGANIC TAPIOCA SYRUP, ORGANIC SOYBEAN OIL AND/OR ORGANIC SAFFLOWER OIL, ORGANIC COCOA (PROCESSED WITH ALKALI), VANILLA EXTRACT, CAROB BEAN GUM, TAPIOCA SUGAR, GUAR GUM, CARRAGEENAN.

http://sodeliciousdairyfree.com/products/soy-milk-ice-creams/chocolate-velvet (webpage last

visited December 20, 2012).  The image and list of ingredients on Defendant's website for its So

Delicious Dairy Free Cultured Coconut Milk Passionate Mango referenced as "Yogurt" appears as

follows:

*Class Action Complaint*



## Nutrition Facts

| Serving Size | 1 Container (170g) | |
|---|---|---|
| **Amount Per Serving** | | |
| **Calories** | | 130 |
| Calories from Fat | | 60 |

% Daily Value*

| | | |
|---|---|---|
| **Total Fat** | 6g | 9% |
| Saturated Fat | 6g | 30% |
| Trans Fat | 0g | |
| **Cholesterol** | 0mg | 0% |
| **Sodium** | 10mg | 0% |
| **Potassium** | 0mg | 0% |
| **Total Carbohydrate** | 20g | 7% |
| Dietary Fiber | 2g | 8% |
| Sugar | 16g | |
| **Protein** | 1g | |

| | |
|---|---|
| • Vitamin A | 10% |
| • Vitamin C | 6% |
| • Calcium | 25% |
| • Iron | 6% |
| • Vitamin B12 | |

-6-

*Magnesium*                                                                    30%

*\*\* Comprised of 65% medium chain fatty acids (MCFAs)*                        25%

*Ingredients: COCONUT MILK (COCONUT CREAM, WATER, GUAR GUM, XANTHAN GUM), ORGANIC EVAPORATED CANE JUICE, PASSIONFRUIT JUICE CONCENTRATE, MANGOES, PECTIN, CHICORY ROOT EXTRACT (INULIN), TAPIOCA DEXTROSE, ALGIN (KELP EXTRACT), MAGNESIUM PHOSPHATE, TRICALCIUM PHOSPHATE, ORGANIC RICE STARCH, LOCUST BEAN GUM, LIVE CULTURES, CITRIC ACID, NATURAL FLAVOR, CARRAGEENAN, DIPOTASSIUM PHOSPHATE, VITAMIN B12.*

9.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.

10.     Identical federal and California laws regulate the content of labels on packaged food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law"). Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

11.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any representation in the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

12.     Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels. In particular, in making unlawful "Organic Dehydrated Cane Juice" and "Organic Evaporated Cane Juice" claims on its Misbranded Food

Products, Defendant has violated labeling regulations mandated by federal and California law by listing sugar and/or sugar cane syrups as "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice."

13.     According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including sugar, sucrose, or dried cane syrup. Sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and 21 C.F.R. §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated. Cane syrup is defined by regulation in 21 C.F.R. § 168.130. The common or usual name for the solid or dried form of cane syrup is "dried cane syrup."

14.     Sugar cane products exist in many different forms, ranging from raw sugars and syrups to refined sugar and molasses. These products are differentiated by their moisture, molasses, and sucrose content as well as by crystal size and any special treatments. Sugar cane products are required by regulation (21 C.F.R. §101.4) to be described by their common or usual names, sugar (21 C.F.R. 101.4(b)(20) and 21 C.F.R. §184.1854 or cane syrup (21 C.F.R. 168.1340). Other sugar cane products have common or usual names established by common usage such as molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar and demerara sugar.

15.     The FDA has instructed that sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "Dehydrated Cane Juice" or "Evaporated Cane Juice." The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (*i.e.,* that the ingredients are sugars or syrups) as required by 21 C.F.R § 102.5. Nevertheless, Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws that govern the types of representations that can be made on food labels.

16.     Defendant has made and continues to make unlawful drug and health claims on the labeling of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded. These claims are unlawful and violate 21 C.F.R. §101.14

-8-

1    because the claims have not been approved by the FDA or the Defendant's products contain

2    disqualifying nutrient levels. For example, the Defendant's cultured coconut milk has six grams of

3    saturated fat, which is a disqualifying amount precluding the Defendant's unlawful health claims

4    described above in paragraph 2. Under federal and California law, Defendant's Misbranded Food

5    Products cannot legally be manufactured, advertised, distributed, held or sold. Defendant's false

6    and misleading labeling practices stem from its global marketing strategy. Thus, the violations and

7    misrepresentations are similar across product labels and product lines.

8         17.      Defendant's violations of law include the illegal advertising, marketing, distribution,

9    delivery and sale of Defendant's Misbranded Food Products to consumers in California and

10   throughout the United States.

11                                      **PARTIES**

12         18.      Plaintiff Kim Avoy is a resident of Los Gatos, California who purchased Defendant's

13   Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class

14   Period").

15         19.      Defendant Turtle Mountain Food Company is a Delaware corporation, and does

16   business throughout California and the United States, with its principal place of business located at

17   1130 Shelley Street, Springfield OR 97477. Turtle Mountain may be served with process of this

18   Court by service on its California registered agent for service of process, Chris Kelly, 10100 Santa

19   Monica Blvd., Suite 2200, Los Angeles, CA 90067-4120.

20         20.      Defendant sells its Misbranded Food Products to consumers in grocery and other

21   retail stores throughout California and the United States. Defendant has pursued a plan, design,

22   and course of conduct to unlawfully advertise, market, distribute, deliver, and sell Defendant's

23   Misbranded Food Products to consumers in California and throughout the United States.

24                          **JURISDICTION AND VENUE**

25         21.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

26   because this is a class action in which: (1) there are over 100 members in the proposed class;

27   (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

28   of the proposed class members exceed $5,000,000 in the aggregate.

22.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

23.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

24.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

### A.     Identical California And Federal Laws Regulate Food Labeling

27.     Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

28.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code §110100.

29.     In addition to its blanket adoption of federal labeling requirements, California has

1  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

2  federal food laws and regulations. For example, food products are misbranded under California

3  Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars;

4  are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform

5  to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted

6  thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to

7  conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r)

8  and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if

9  words, statements and other information required by the Sherman Law to appear on their labeling

10  are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety

11  Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that

12  adequately informs consumers of their value for that use; and are misbranded under California

13  Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical

14  preservatives but fail to adequately disclose that fact on their labeling.

15      **B.      FDA Enforcement History**

16      30.     In recent years the FDA has become increasingly concerned that food manufacturers

17  were disregarding food labeling regulations. To address this concern, the FDA elected to take steps

18  to inform the food industry of its concerns and to place the industry on notice that food labeling

19  compliance was an area of enforcement priority.

20      31.     In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point*

21  *Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP

22  Guidance"). The 2009 FOP Guidance advised the food industry:

23          FDA's research has found that with FOP labeling, people are less likely to check the
            Nutrition Facts label on the information panel of foods (usually, the back or side of
24          the package). It is thus essential that both the criteria and symbols used in front-of-
            package and shelf-labeling systems are nutritionally sound, well-designed to help
25          consumers make informed and healthy food choices, and not be false or misleading.
            The agency is currently analyzing FOP labels that appear to be misleading. The
26          agency is also looking for symbols that either expressly or by implication are
            nutrient content claims. We are assessing the criteria established by food
27          manufacturers for such symbols and comparing them to our regulatory criteria.

28

-11-

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (C.F.R.) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

... Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm187208.htm

32.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

33.     Defendant knew or should have known about the 2009 FOP guidance.

34.     Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the unlawful and misleading food labeling claims from its Misbranded Food Products.

35.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which

*Class Action Complaint*

includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections....

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.

. . . .

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help

-13-

1    consumers construct healthy diets.

2    I will close with the hope that these warning letters will give food manufacturers
3    further clarification about what is expected of them as they review their current
     labeling. I am confident that our past cooperative efforts on nutrition information
4    and claims in food labeling will continue as we jointly develop a practical, science-
     based front-of-pack regime that we can all use to help consumers choose healthier
5    foods and healthier diets.

6    http://www.fda.gov/Food/LabelingNutrition/ucm202733.htm?utm_campaign=Google2&utm_sourc
7    e=fdaSearch&utm_medium=website&utm_term=Open Letter to Industry from Dr.
     Hamburg&utm_content=1

8        36.    Defendant continues to utilize unlawful food labeling claims despite the express

9    guidance of the FDA in the Open Letter.

10       37.    At the same time that it issued its Open Letter, the FDA issued a number of warning

11   letters to companies whose products were misbranded as a result of their unlawful labels.

12       38.    In its 2010 Open Letter to industry the FDA stated that the agency not only expected

13   companies that received warning letters to correct their labeling practices but also anticipated that

14   other companies would examine their food labels to ensure that they are in full compliance with

15   food labeling requirements and make changes where necessary. Defendant did not change the

16   labels on its Misbranded Food Products in response to these warning letters.

17       39.    In addition to its general guidance about unlawful labeling practices, the FDA has

18   issued specific guidance about the unlawful practices at issue here.  In October of 2009, the FDA

19   issued its *Guidance for Industry:  Ingredients Declared as Evaporated Cane Juice,* which advised

20   the industry that the term "Evaporated Cane Juice" was unlawful.

21   http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments,

22       40.    In addition to its guidance to industry in general, the FDA has repeatedly sent

23   warning letters to specific companies regarding specific violations such as the ones at issue in this

24   case. The FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter

25   "communicates the agency's position on a matter" and that "[w]arning Letters are issued only for

26   violations of regulatory significance." The FDA publicly posted these letters on its website with the

27   expectation that food manufacturers would revise their product labels to correct any violations

28   outlined in these warning letters.

-14-

41.     In particular, the FDA has issued warning letters to at least a half-dozen companies for utilizing the unlawful term "Evaporated Cane Juice."

42.     Defendant has continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on Evaporated Cane Juice and the FDA warning letters on evaporated cane juice. As such, Defendant's Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the 2009 Guidance on Evaporated Cane Juice and the FDA warning letters on evaporated cane juice as well as federal and California law.

43.     Despite the numerous FDA warning letters and the 2009 Guidance on Evaporated Cane Juice or the FDA evaporated cane juice warning letters and the 2010 Open Letter, Defendant has not removed the unlawful and misleading food labeling ingredients from Defendant's Misbranded Food Products.

44.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make such claims.

45.     Even in the face of direct FDA regulation that "Evaporated Cane Juice" is a "false and misleading" term, Defendant continues to use the term at the present time.

**C.      Defendant's Unlawful and Misleading Evaporated Cane Juice Claims Cause Defendant's Food Products To Be Misbranded**

        **1.      "Dehydrated Cane Juice" or "Evaporated Cane Juice" Are Unlawful Terms Prohibited From Use On A Product Label Or In Its Ingredient List**

46.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names. 21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law. In particular, Defendant has used and continues to use the term "Dehydrated Cane Juice" or "Evaporated Cane Juice" on products in violation of numerous labeling regulations designed to

-15-

1  protect consumers from misleading labeling practices. Defendant's practices also violate express

2  FDA policies.

3       47.    For example, Defendant violated the FDA's express policy with respect to the listing

4  of certain ingredients such as sugar or dried cane syrup.  As stated by the FDA, "FDA's current

5  policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane

6  juice' because that term falsely suggests that the sweeteners are juice."

7       48.    The FDA "considers such representations to be false and misleading under section

8  403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food

9  and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21

10  U.S.C. 102.5."

11      49.    In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as*

12  *Evaporated Cane Juice*, which that:

13  "...the term "evaporated cane juice" has started to appear as an ingredient on food
14  labels, most commonly to declare the presence of sweeteners derived from sugar
    cane syrup. However, FDA's current policy is that sweeteners derived from sugar
15  cane syrup should not be declared as "evaporated cane juice" because that term
    falsely suggests that the sweeteners are juice...
16

17  "Juice" is defined by 21 C.F.R. 120.1(a) as "the aqueous liquid expressed or
    extracted from one or more fruits or vegetables, purees of the edible portions of one
18  or more fruits or vegetables, or any concentrates of such liquid or puree." ...

19  "As provided in 21 C.F.R. 101.4(a)(1), "Ingredients required to be declared on the
    label or labeling of a food . . . shall be listed by common or usual name . . . ." The
20  common or usual name for an ingredient is the name established by common usage
    or by regulation (21 C.F.R. 102.5(d)). The common or usual name must accurately
21  describe the basic nature of the food or its characterizing properties or ingredients,
    and may not be "confusingly similar to the name of any other food that is not
22  reasonably encompassed within the same name" (21 C.F.R. 102.5(a))...

23
    "Sugar cane products with common or usual names defined by regulation are sugar
24  (21 C.F.R. 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 C.F.R.
    168.130). Other sugar cane products have common or usual names established by
25  common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, and
    muscovado sugar, and demerara sugar)...
26

27  "The intent of this draft guidance is to advise the regulated industry of FDA's view
    that the term "evaporated cane juice" is not the common or usual name of any type
28  of sweetener, including dried cane syrup. Because cane syrup has a standard of

-16-

*Class Action Complaint*

identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."...

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R. 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 C.F.R. 101.30).

50.     Despite the issuance of the 2009 FDA Guidance, Defendant has not removed the unlawful and misleading food labeling ingredients from its Misbranded Food Products.

51.     Defendant often lists ingredients with unlawful and misleading names. The Nutrition Facts label of the Misbranded Food Products list "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" as an ingredient. According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup." The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'" Similarly, Sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated.

52.     Various FDA warning letters have made it clear that the use of the term evaporated cane juice is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods bearing labels which contain the term "Dehydrated Cane Juice" or "Evaporated Cane Juice" are misbranded.

53.     Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

54.     Defendant's false, unlawful and misleading ingredient listings render its products misbranded under federal and California law. Misbranded products cannot be legally sold, have no

-17-

economic value, and are legally worthless.  Plaintiff and the class paid a premium price for the Misbranded Food Products.

55.     Defendant has also made these illegal claims on its websites and in advertising in violation of federal and California law.

### 2.     The Standard Of Identity For Yogurt Does Not Permit The Use Of Evaporated Cane Juice As An Ingredient

56.     As a matter of law it is unlawful to use evaporated cane juice as an ingredient in yogurt.

57.     The FDA's Standard of Identity for yogurt (21 C.F.R. § 131.200) prohibits the inclusion of any nutritive carbohydrate sweeteners not listed in the standard of identity. Evaporated cane juice is not included on the list of allowed sweeteners which is limited to:

> "sugar (sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses (other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup, dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; maple sugar; or any of the sweeteners listed in part 168 of this chapter [21], except table sirup."

58.     As discussed above, "Evaporated Cane Juice" is an unlawful term as it is merely a false and misleading name for another food or ingredient that has a common or usual name, namely sugar or dried cane syrup.  However, to the extent that "Evaporated Cane Juice" is considered to be the common or usual name of a type of sweetener, that sweetener is not authorized for use in yogurt and Defendant's inclusion of "Evaporated Cane Juice" in its cultured products that it refers to as "yogurt" in violation of the prohibition to do so, precludes the product it is added to from being called or sold as yogurt.

### D.     Defendant Has Violated California Law

59.     Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

60.     Defendant has violated California Health & Safety Code § 110395, which makes it

-18-

1   unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

2      61.   Defendant has violated California Health & Safety Code §§ 110398 and 110400,

3   which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food

4   that has been falsely advertised.

5      62.   Defendant has violated California Health & Safety Code § 110660 because its

6   product labeling is false and misleading in one or more ways.

7      63.   Defendant's Misbranded Food Products are misbranded under California Health &

8   Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient

9   content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

10      64.   Defendant has violated California Health & Safety Code § 110760, which makes it

11   unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is

12   misbranded.

13      65.   Defendant's Misbranded Food Products are misbranded under California Health &

14   Safety Code § 110755 because the products are purported to be or are represented for special

15   dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and

16   other dietary properties as the Secretary determines to be, and by regulations prescribes as,

17   necessary in order fully to inform purchasers as to its value for such uses.

18      66.   Defendant has violated California Health & Safety Code § 110765, which makes it

19   unlawful for any person to misbrand any food.

20      67.   Defendant has violated California Health & Safety Code § 110770, which makes it

21   unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer

22   for delivery any such food.

23      68.   Defendant has violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has

24   been incorporated by reference in the Sherman Law, by failing to include on its product labels the

25   common and usual names of ingredients contained in its food products.  Defendant has also

26   violated the standards set by 21 C.F.R. §§ 101.3 and 131.200 by violating the Standard of Identity

27   for yogurt. Additionally, Defendant has violated the standard set by 21 C.F.R. § 101.14 by making

28   unlawful health claims about its products such as those referenced in paragraphs 2 and 16 above.

1      **F.      Plaintiff Purchased Defendant's Misbranded Food Products**

2          69.      Plaintiff cares about the nutritional content of food and seeks to maintain a healthy

3   diet.

4          70.      During the Class Period, Plaintiff purchased the following of Defendant's

5   Misbranded Food Products: So Delicious Cultured Coconut Milk. Plaintiff purchased the blueberry

6   favored variety.

7          71.      Plaintiff would not have purchased Defendant's Misbranded Food Products had

8   Plaintiff known that the Misbranded Food Products contained sugar or dried cane syrup. Plaintiff

9   read and reasonably relied upon the labels on Defendant's Misbranded Food Products, including the

10  ingredient "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" on the back

11  panels, before purchasing Defendant's products. Plaintiff also read and reasonably relied upon

12  Defendant's unlawful and deceptive misrepresentations on Defendant's website before purchasing

13  Defendant's products, including its unlawful coconut related health claims described in Paragraph 2

14  above. Defendant's web address is printed on its package labels, and by law Defendant's website

15  misrepresentations are incorporated in its labels.

16         72.      Plaintiff relied on Defendant's package labeling including the back panel ingredients

17  list referencing "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice," and based

18  and justified the decision to purchase Defendant's products in substantial part on Defendant's

19  package labeling, including the labeling claiming that Defendant's product contained as an

20  ingredient "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" and that the

21  Defendant's coconut products possessed certain health benefits detailed above in Paragraph 2.

22         73.      At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's

23  products were misbranded as set forth herein, and would not have bought the products had Plaintiff

24  known the truth about them. Plaintiff would not have bought the Defendant's products had Plaintiff

25  known they contained disqualifying high levels of saturated that barred the health claims made by

26  Defendant.

27         74.      At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's

28  "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" ingredient name was

                                          -20-

1   unlawful and unauthorized as set forth herein.  Had Plaintiff known this information, Plaintiff

2   would not have bought the products.

3       75.    Plaintiff did not know and had no reason to know that Defendant's Misbranded Food

4   Products were misbranded and bore false food labeling claims despite failing to meet the

5   requirements to make those food labeling claims.  Had Plaintiff known this information, Plaintiff

6   would not have bought the products.

7       76.    In reliance on Defendant's "Organic Dehydrated Cane Juice" or "Organic

8   Evaporated Cane Juice" ingredient name, Plaintiff and thousands of others in California and

9   throughout the United States purchased the Misbranded Food Products at issue.

10      77.    Defendant's labeling, advertising and marketing as alleged herein are false and

11  misleading and were designed to increase sales of the products at issue.  Defendant's

12  misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a

13  reasonable person would attach importance to Defendant's misrepresentations in determining

14  whether to purchase the products at issue.

15      78.    A reasonable person would also attach importance to whether Defendant's products

16  were legally salable, and capable of legal possession, and to Defendant's representations about

17  these issues in determining whether to purchase the products at issue. Plaintiff would not have

18  purchased Defendant's Misbranded Food Products had Plaintiff known they were not capable of

19  being legally sold or held.

20      79.    As a result of Defendant's unlawful use of the terms "Organic Dehydrated Cane

21  Juice" or "Organic Evaporated Cane Juice or "yogurt," and its use of unlawful coconut related

22  health claims, Plaintiff and the Class members purchased the Misbranded Food Products at issue.

23  Plaintiff and the Class members have been proximately harmed, and Defendant has been unjustly

24  enriched, by Defendant's deceptive and unlawful scheme.

25                      **CLASS ACTION ALLEGATIONS**

26      80.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure

27  23(b)(2) and 23(b)(3) on behalf of the following class:

28      All persons in the United States, and alternatively, a sub-class of all persons in

California who, within the last four years, purchased Defendant's coconut products or its products labeled with the ingredient "Organic Dehydrated Cane Juice" or "Organic Evaporated Cane Juice" (the "Class").

81.    The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

82.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

83.    <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

84.    <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

b.    Whether the food products at issue were misbranded as a matter of law;

c.    Whether Defendant made unlawful and misleading "Organic Dehydrated Cane Juice" and "Organic Evaporated Cane Juice or health claims with respect to food products sold to consumers;

d.    Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e.    Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.    Whether Defendant's unlawful, unfair and/or deceptive practices

-22-

harmed Plaintiff and the Class; and

g.      Whether Defendant was unjustly enriched by its deceptive practices.

85.     Typicality:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

86.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

87.     Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

-23-

1    Further, as the damages suffered by individual members of the Class may be relatively small, the

2    expense and burden of individual litigation would make it difficult or impossible for individual

3    members of the Class to redress the wrongs done to them, while an important public interest will be

4    served by addressing the matter as a class action.  Class treatment of common questions of law and

5    fact would also be superior to multiple individual actions or piecemeal litigation in that class

6    treatment will conserve the resources of the Court and the litigants, and will promote consistency

7    and efficiency of adjudication.

8         88.    The prerequisites to maintaining a class action for injunctive or equitable relief

9    pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

10   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

11   with respect to the Class as a whole.

12        89.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

13   are met as questions of law or fact common to class members predominate over any questions

14   affecting only individual members, and a class action is superior to other available methods for

15   fairly and efficiently adjudicating the controversy.

16        90.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

17   encountered in the management of this action that would preclude its maintenance as a class action.

18                          **CAUSES OF ACTION**

19                        **FIRST CAUSE OF ACTION**
20              **Business and Professions Code § 17200 *et seq.***
                   **Unlawful Business Acts and Practices**
21

22        91.    Plaintiff incorporates by reference each allegation set forth above.

23        92.    Defendant's conduct constitutes unlawful business acts and practices.

24        93.    Defendant sold Misbranded Food Products in California and throughout the United

25   States during the Class Period.

26        94.    Defendant is a corporation and, therefore, a "person" within the meaning of the

27   Sherman Law.

28        95.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of

                                          -24-

1  Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

2  misbranded food provisions of Article 6 of the Sherman Law.

3       96.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of

4  Defendant's violations of § 17500 *et seq.*, which forbids untrue and misleading advertising.

5       97.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of

6  Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

7       98.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not

8  capable of being sold or held legally and which had no economic value and were legally worthless.

9  Plaintiff and the Class paid a premium for the Misbranded Food Products.

10       99.    As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant

11  to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct

12  and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten

13  gains and to restore to any class member any money paid for the Misbranded Food Products.

14       100.    Defendant's unlawful business acts present a threat and reasonable continued

15  likelihood of injury to Plaintiff and the Class.

16       101.    As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and

17  Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and

18  such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains

19  and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

20

21  

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200 *et seq.***
**Unfair Business Acts and Practices**

22

23       102.    Plaintiff incorporates by reference each allegation set forth above.

24       103.    Defendant's conduct as set forth herein constitutes unfair business acts and practices.

25       104.    Defendant sold Misbranded Food Products in California and throughout the United

26  States during the Class Period.

27       105.    Plaintiff and members of the Class suffered a substantial injury by virtue of buying

28  Defendant's Misbranded Food Products that they would not have purchased absent Defendant's

illegal conduct.

106.    Defendant's deceptive marketing, advertising, packaging and labeling of Misbranded Food Products and sale of unsalable misbranded products that were illegal to possess was of no benefit to Plaintiff and members of the Class, and the harm to consumers is substantial.

107.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that had no economic value and were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

108.    Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

109.    The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be unlawful, illegal, immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

110.    Pursuant to Business and Professions Code § 17203, as a result of Defendant's conduct, Plaintiff and the Class, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200 *et seq.*
### Fraudulent Business Acts and Practices

111.    Plaintiff incorporates by reference each allegation set forth above.

112.    Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200 *et seq.*

113.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

-26-

114.    Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentations that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

115.    Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

116.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that had no economic value and were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

117.    As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500 *et seq.*
### <u>Misleading and Deceptive Advertising</u>

118.    Plaintiff incorporates by reference each allegation set forth above.

119.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising against Defendant.

120.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

121.    Defendant engaged in a scheme of offering Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of

-27-

1  advertising as contained in Business and Professions Code §17500 *et seq.* in that such product

2  packaging and labeling, and promotional materials were intended as inducements to purchase

3  Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff

4  and the Class that were intended to reach members of the Class. Defendant knew, or in the exercise

5  of reasonable care should have known, that these statements were misleading and deceptive as set

6  forth herein.

7       122.    In furtherance of its plan and scheme, Defendant prepared and distributed within

8  California and nationwide via product packaging and labeling, and other promotional materials,

9  statements that misleadingly and deceptively represented the composition and the nature of

10  Defendant's Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied

11  on Defendant's materials, and were the intended targets of such representations.

12       123.    Defendant's conduct in disseminating misleading and deceptive statements in

13  California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

14  consumers by obfuscating the true composition and nature of Defendant's Misbranded Food

15  Products in violation of the "misleading prong" of California Business and Professions Code

16  §17500 *et seq.*

17       124.    As a result of Defendant's violations of the "misleading prong" of California

18  Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the

19  expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held, have no

20  economic value and are legally worthless. Plaintiff and the Class paid a premium price for the

21  Misbranded Food Products.

22       125.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

23  entitled to an order enjoining such future conduct by Defendant, and such other orders and

24  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money

25  paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

26

27

28

*Class Action Complaint*

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500 *et seq.*
### Untrue Advertising

126.    Plaintiff incorporates by reference each allegation set forth above.

127.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.* regarding untrue advertising.

128.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

129.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

130.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

131.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

132.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of

*Class Action Complaint*

1  Plaintiff and the Class.  Misbranded products cannot be legally sold or held, have no economic

2  value, and are legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded

3  Food Products.

4        133.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

5  entitled to an order enjoining such future conduct by Defendant, and such other orders and

6  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money

7  paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

10       134.    Plaintiff incorporates by reference each allegation set forth above.

11       135.    This cause of action is brought pursuant to the CLRA.  Plaintiff does not currently

12  seek monetary damages for this cause of action and this cause of action is limited solely to

13  injunctive relief.  Plaintiff intends to amend this Complaint to seek damages in accordance with the

14  CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

15       136.    At the time of any amendment seeking damages under the CLRA, Plaintiff will

16  demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent,

17  thus supporting an award of punitive damages.

18       137.    Consequently, Plaintiff and the Class will be entitled to actual and punitive damages

19  against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code §

20  1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts

21  and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and

22  attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal.

23  Civ. Code § 1780.

24       138.    Defendant's actions, representations and conduct have violated, and continue to

25  violate the CLRA, because they extend to transactions that are intended to result, or which have

26  resulted, in the sale of goods to consumers.

27       139.    Defendant sold Misbranded Food Products in California and throughout the United

28  States during the Class Period.

-30-

140.    Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

141.    Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

142.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

143.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

144.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

145.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

146.    Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

147.    Plaintiff incorporates by reference each allegation set forth above.

148.    As a result of Defendant's fraudulent and misleading labeling, advertising,

*Class Action Complaint*

1 marketing and sales of Defendant's Misbranded Food Products, Defendant was enriched at the

2 expense of Plaintiff and the Class.

3     149.    Defendant sold Misbranded Food Products to Plaintiff and the Class that were not

4 capable of being sold or held legally and which had no economic value and were legally worthless.

5 It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits

6 it received from Plaintiff and the Class, in light of the fact that the products were not what

7 Defendant purported them to be. Thus, it would be unjust and inequitable for Defendant to retain

8 the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the

9 products at issue.

10     150.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class have

11 suffered damages in an amount to be proven at trial.

12                              **JURY DEMAND**

13     Plaintiff hereby demands a trial by jury of all claims.

14                              **PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

16 behalf of the general public, prays for judgment against Defendant as follows:

17     A.    For an order certifying this case as a class action and appointing Plaintiff and

18 Plaintiff's counsel to represent the Class;

19     B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

20 Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek

21 monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

22     C.    For an order requiring Defendant to immediately cease and desist from selling

23 Misbranded Food Products in violation of law; enjoining Defendant from continuing to market,

24 advertise, distribute, and sell these products in the unlawful manner described herein; and ordering

25 Defendant to engage in corrective action;

26     D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

27     E.    For an order awarding attorneys' fees and costs;

28     F.    For an order awarding punitive damages;

-32-

1    G.    For an order awarding pre-and post-judgment interest; and

2    H.    For an order providing such further relief as this Court deems proper.

3

Dated:  January 17, 2013              Respectfully submitted,

4

5

6                                     Ben F. Pierce Gore (SBN 128515)
                                      PRATT & ASSOCIATES
7                                     1871 The Alameda, Suite 425
                                      San Jose, CA  95126
8                                     Telephone:  (408) 429-6506
                                      Fax:  (408) 369-0752
9                                     pgore@prattattorneys.com

10                                    *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-33-

*Class Action Complaint*